﻿Citation Nr: AXXXXXXXX
Decision Date: 05/20/19 Archive Date: 05/20/19

DOCKET NO. 181210-1231
DATE: May 20, 2019

ORDER

Service connection for a lumbar spine condition (claimed as back condition) is denied.

Service connection for gastroesophageal reflux disease (GERD) is denied.

Service connection for a mental disorder, claimed as depressive illness is denied.

Service connection for hyperlipidemia is denied.

Service connection for left carpal tunnel syndrome (claimed as arm condition) is denied.

Service connection for right carpal tunnel syndrome (claimed as right arm condition) is denied.

Service connection for left hip arthritis is denied

Service connection for right hip arthritis is denied.

Service connection for left knee arthritis (claimed as bad knee pain) is denied.

Service connection for right knee arthritis (claimed as bad knee pain) is denied.

Service connection for discoid lupus erythematosus is denied.

Service connection for hypertension is denied.

Service connection for sleep apnea is denied.

Service connection for bilateral hearing loss is denied.

Service connection for tinnitus is denied.

REMANDED

The issue of service connection for right eye condition (claimed as monocular esotropia) is remanded.

FINDINGS OF FACT

1. The Veteran’s a lumbar spine condition (claimed as back condition) did not manifest to a compensable degree within the applicable presumptive period; continuity of symptomatology is not established; and is not otherwise etiologically related to an in-service injury, event, or disease.

2. The Veteran’s GERD is not shown to be causally or etiologically related to any disease, injury, or incident during service.

3. The Veteran’s mental disorder claimed as a depressive illness is not shown to be causally or etiologically related to any disease, injury, or incident during service.

4. Hyperlipidemia is a laboratory finding which is not a disability for which VA compensation benefits are payable.

5. The Veteran’s left carpal tunnel syndrome (claimed as arm condition) did not manifest to a compensable degree within the applicable presumptive period; continuity of symptomatology is not established; and is not otherwise etiologically related to an in-service injury, event, or disease.

6. The Veteran’s right carpal tunnel syndrome (claimed as right arm condition) did not manifest to a compensable degree within the applicable presumptive period; continuity of symptomatology is not established; and is not otherwise etiologically related to an in-service injury, event, or disease.

7. The Veteran’s left hip arthritis did not manifest to a compensable degree within the applicable presumptive period; continuity of symptomatology is not established; and is not otherwise etiologically related to an in-service injury, event, or disease.

8. The Veteran’s right hip arthritis did not manifest to a compensable degree within the applicable presumptive period; continuity of symptomatology is not established; and is not otherwise etiologically related to an in-service injury, event, or disease.

9. The Veteran’s left knee arthritis (claimed as bad knee pain) did not manifest to a compensable degree within the applicable presumptive period; continuity of symptomatology is not established; and is not otherwise etiologically related to an in-service injury, event, or disease.

10. The Veteran’s right knee arthritis (claimed as bad knee pain) did not manifest to a compensable degree within the applicable presumptive period; continuity of symptomatology is not established; and is not otherwise etiologically related to an in-service injury, event, or disease.

11. The Veteran’s discoid lupus erythematosus did not manifest to a compensable degree within the applicable presumptive period; continuity of symptomatology is not established; and is not otherwise etiologically related to an in-service injury, event, or disease.

12. The Veteran’s hypertension did not manifest to a compensable degree within the applicable presumptive period; continuity of symptomatology is not established; and is not otherwise etiologically related to an in-service injury, event, or disease.

13. The preponderance of the evidence of record is against finding that the Veteran has, or has had at any time during the appeal, a current diagnosis of sleep apnea.

14. The Veteran’s right ear hearing loss did not manifest to a compensable degree within the applicable presumptive period; continuity of symptomatology is not established; and is not otherwise etiologically related to an in-service injury, event, or disease.

15. The Veteran’s left ear does not have impaired hearing sufficient for VA purposes.

16. The Veteran’s tinnitus did not manifest to a compensable degree within the applicable presumptive period; continuity of symptomatology is not established; and is not otherwise etiologically related to an in-service injury, event, or disease.

CONCLUSIONS OF LAW

1. The criteria to establish service connection for a lumbar spine condition (claimed as back condition) have not been met. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309.

2. The criteria to establish service connection for GERD have not been met. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303.

3. The criteria to establish service connection for a mental disorder claimed as a depressive illness have not been met. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303.

4. The criteria to establish service connection for hyperlipidemia have not been met. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303.

5. The criteria to establish service connection for left carpal tunnel syndrome (claimed as arm condition) have not been met. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309.

6. The criteria to establish service connection for right carpal tunnel syndrome (claimed as arm condition) have not been met. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309.

7. The criteria to establish service connection for left hip arthritis have not been met. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309.

8. The criteria to establish service connection for right hip arthritis have not been met. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309.

9. The criteria to establish service connection for left knee arthritis (claimed as bad knee pain) have not been met. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309.

10. The criteria to establish service connection for right knee arthritis (claimed as bad knee pain) have not been met. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309.

11. The criteria to establish service connection for discoid lupus erythematosus have not been met. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309.

12. The criteria to establish service connection for hypertension have not been met. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309.

13. The criteria to establish service connection for sleep apnea have not been met. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303.

14. The criteria to establish service connection for hearing loss have not been met. 38 U.S.C. §§ 1110, 1131, 5107(b); 38 C.F.R. §§ 3.102, 3.303, 3.304, 3.307, 3.309, 3.385.

15. The criteria to establish service connection for tinnitus have not been met. 38 U.S.C. §§ 1110, 1154; 38 C.F.R. §§ 3.303, 3.307, 3.309, 3.326(a).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran had active service in the United States Army from April 1980 through March 1982. 

This matter comes before the Board of Veterans’ Appeals (Board) on appeal from a November 2018 rating decision of a Department of Veterans Affairs (VA) Regional Office (RO).

Applicable to this matter is the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review. The Veteran chose to participate in VA’s test program RAMP, the Rapid Appeals Modernization Program. This decision has been written consistent with the new AMA framework.

The Veteran selected the Higher-Level Review lane when he submitted the RAMP election form. Accordingly, the November 2018 RAMP rating decision considered the evidence of record as of the date VA received the RAMP election form. The Veteran timely appealed this RAMP rating decision to the Board and requested direct review of the evidence considered by the Agency of Original Jurisdiction (AOJ).

The Veteran’s application as to service connection for a lumbar spine disorder, hearing loss, tinnitus, GERD, sleep apnea, bilateral knee arthritis, depressive illness, discoid lupus erythematosus, hypertension, left carpal tunnel syndrome, and right eye condition have been recharacterized from efforts to reopen claims, because evidence was received within one year of the November 2017 legacy rating decision. VA did not determine whether the evidence received was new and material. 38 C.F.R. § 3.156(b). Consequently, the service connection claims were still pending when the Veteran elected the modernized review system pursuant to 84 Fed. Reg. 138, 177 (Jan. 18, 2019) (to be codified at 38 C.F.R. § 19.2). The AOJ considered the merits of the service connection claims in its November 2018 rating decision. 38 U.S.C. § 7104(a).

Duties to Notify and Assist

The Veteran was not afforded a VA examination in connection with the claims of service connection for GERD, a depressive illness, discoid lupus erythematosus, hypertension, bilateral carpal tunnel, bilateral hip condition, bilateral knee, condition, and sleep apnea. On the facts of this case, however, an examination is not required. VA will provide a medical examination or obtain a medical opinion if the evidence indicates the existence of a current disability or persistent or recurrent symptoms of a disability that may be associated with an event, injury, or disease in service, but the record does not contain sufficient medical evidence to decide the claim. 38 U.S.C. § 5103A(d)(2); 38 C.F.R. § 3.159(c)(4)(i); McLendon v. Nicholson, 20 Vet. App. 79 (2006). 

There is no reasonable possibility that a VA examination or opinion could aid in substantiating this claim of service connection, because there is nothing in service to which the current disability could be related by competent opinion. S¬ee 38 U.S.C. § 5103A(a)(2) (VA “is not required to provide assistance to a claimant... if no reasonable possibility exists that such assistance would aid in substantiating the claim.”); 38 C.F.R. § 3.159(d) (VA to discontinue assistance where there is “no reasonable possibility that further assistance would substantiate the claim”); see also Duenas v. Principi, 18 Vet. App. 512 (2004).

There are instances in which lay testimony can serve to establish an association between service and the claimed disability for the purpose of satisfying the criteria for an examination or medical opinion. See Charles v. Principi, 16 Vet. App. 370 (2002). However, the Veteran’s contentions regarding the occurrence of an in-service event are not credible and his contentions regarding an association of his disability to service are not competent. As there is no competent evidence suggesting any association with service, the Board finds that an examination or opinion is not warranted. See Wells v. Principi, 326 F. 3d 1381 (Fed. Cir. 2003).

Service Connection

Service connection may be granted for a disability resulting from a disease or injury incurred in or aggravated by service. See 38 U.S.C. §§ 1110, 1131; 38 C.F.R. § 3.303(a). “To establish a right to compensation for a present disability, a veteran must show: ‘(1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service’ - the so-called ‘nexus’ requirement.” Holton v. Shinseki, 557 F.3d 1362, 1366 (Fed. Cir. 2010) (quoting Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004)). Disorders diagnosed after discharge will still be service connected if all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d); see Combee v. Brown, 34 F.3d 1039, 1043 (Fed. Cir. 1994).

Certain disorders, listed as “chronic” in 38 C.F.R. § 3.309(a) and 38 C.F.R. § 3.303(b), are capable of service connection based on a continuity of symptomatology without respect to an established causal nexus to service. See Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). Hypertension, as a cardiovascular-renal disease; arthritis; lupus erythematosus; hearing loss; and tinnitus constitute “chronic” diseases listed under 38 C.F.R. § 3.309(a). Therefore, the presumptive service connection provisions based on “chronic” in-service symptoms and “continuous” post-service symptoms under 38 C.F.R. § 3.303(b) apply. Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). Where the evidence shows a “chronic disease” in service or “continuity of symptoms” after service, the disease shall be presumed to have been incurred in service. 38 C.F.R. § 3.303(b).

Additionally, where a veteran served ninety days or more of active service, and certain chronic diseases, such as hypertension, arthritis, lupus erythematosus, hearing loss, and tinnitus, become manifest to a degree of 10 percent or more within one year after the date of separation from such service, such disease shall be presumed to have been incurred in service, even though there is no evidence of such disease during the period of service. 38 U.S.C. §§ 1101, 1112, 1113, 1137; 38 C.F.R. §§ 3.307, 3.309(a). While the disease need not be diagnosed within the presumptive period, it must be shown, by acceptable lay or medical evidence, that there were characteristic manifestations of the disease to the required degree during that time. Id.

In deciding an appeal, the Board must analyze the credibility and probative value of the evidence, account for the evidence which it finds to be persuasive or unpersuasive and provide the reasons for its rejection of any material favorable to the claimant. Gabrielson v. Brown, 7 Vet. App. 36, 39-40 (1994); Gilbert v. Derwinski, 1 Vet. App. 49, 57 (1990). Competency of evidence differs from weight and credibility. Competency is a legal concept determining whether testimony may be heard and considered by the trier of fact, while credibility is a factual determination going to the probative value of the evidence to be made after the evidence has been admitted. Rucker v. Brown, 10 Vet. App. 67, 74 (1997); Layno v. Brown, 6 Vet. App. 465, 469 (1994).

When considering whether lay evidence is competent, the Board must determine, on a case-by-case basis, whether a veteran’s disability is the type of disability for which lay evidence may be competent. Kahana v. Shinseki, 24 Vet. App. 428 (2011); see also Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007). A veteran is competent to report symptoms because this requires only personal knowledge, not medical expertise, as it comes to him through his senses. See Layno, 6 Vet. App. 465, 469. Lay testimony is competent to establish the presence of observable symptomatology, where the determination is not medical in nature and is capable of lay observation. Barr, 21 Vet. App. 303. Lay evidence may establish a diagnosis of a simple medical condition, a contemporaneous medical diagnosis, or symptoms that later support a diagnosis by a medical professional. Jandreau, 492 F.3d 1372, 1377.

In deciding claims, it is the Board’s responsibility to evaluate the entire record on appeal. See 38 U.S.C. § 7104(a). When all the evidence is assembled, the Board is then responsible for determining whether the evidence supports the claim or is in relative equipoise, with the veteran prevailing in either event, or whether the preponderance of the evidence is against the claim, in which case the claim is denied. 38 U.S.C. § 5107; 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

1. Service connection for a lumbar spine condition (claimed as back condition).

The Veteran contends that his lumbar spine condition is due to a scar that the Veteran had from an accident prior to service.

While the Veteran has degenerative joint disease with degenerative disc disease of the lumbar spine, which is a chronic disease under 38 U.S.C. § 1101(3) and 38 C.F.R. § 3.309(a), it was not shown as evident or chronic in service or within a presumptive period, did not manifest to a compensable degree within a presumptive period, and was not noted in service with attributable continuity of symptomatology. VA treatment records show the Veteran was not diagnosed with his lumbar spine condition until February 2013, 31 years after his separation from service and 30 years outside of the applicable presumptive period. 

While the Veteran is competent to report having experienced symptoms of low back pain since service and consistently since service, he is not competent to provide a diagnosis in this case or determine that these symptoms were manifestations of degenerative joint disease with degenerative disc disease of the lumbar spine. The issue is medically complex, as it requires knowledge of interpretation of complicated diagnostic medical testing. Jandreau v. Nicholson, 492 F.3d 1372, 1377, 1377 n.4 (Fed. Cir. 2007). 

The Veteran indicated on his report of medical examination at separation a normal spine and other musculoskeletal clinical evaluation and a well-healed, non-symptomatic scar on the lower back. See February 1982 Report of Medical Examination. 

These medical records are highly probative both as to the Veteran’s subjective reports and their resulting objective findings. They were generated with a view towards ascertaining the Veteran’s then-state of physical fitness and are akin to statements of diagnosis or treatment. Rucker v. Brown, 10 Vet. App. 67, 73 (1997) (observing that although formal rules of evidence do not apply before the Board, recourse to the Federal Rules of Evidence may be appropriate if it assists in the articulation of the reasons for the Board’s decision); see also LILLY’S: AN INTRODUCTION TO THE LAW OF EVIDENCE, 2nd Ed. (1987), pp. 245-46 (many state jurisdictions, including the federal judiciary and Federal Rule 803(4), expand the hearsay exception for physical conditions to include statements of past physical condition on the rationale that statements made to physicians for purposes of diagnosis and treatment are exceptionally trustworthy since the declarant has a strong motive to tell the truth in order to receive proper care).

There were not sufficient manifestations to identify the disease entity as chronic in service or within the first post-service year. Therefore, service connection for a lumbar spine condition is not warranted based on the presumption in favor of chronic diseases or continuity of symptomatology.

Service connection for a lumbar spine condition may still be granted on a direct basis; however, the preponderance of the evidence is against finding that a medical nexus exists between the Veteran’s lumbar spine condition and an in-service injury, event or disease. 38 U.S.C. §§ 1110, 1131; Holton v. Shinseki, 557 F.3d 1363, 1366 (Fed. Cir. 2009); 38 C.F.R. § 3.303. 

The August 2016 VA examiner opined that the Veteran’s lumbar spine condition is less likely than not related to his active duty service. The examiner explained that the Veteran had a pre-service scar on his back from when the Veteran hit his back on a water faucet while playing basketball. The examiner further explained the Veteran’s scar was superficial and not over the lumbar spine. The examiner stated he could not explain the difference in size of the scar on entry and exit exams without speculating. 

As discussed above, the Veteran indicated on his report of medical examination at separation a normal spine and other musculoskeletal clinical evaluation. See February 1982 Report of Medical Examination. 

While the Veteran believes his lumbar spine condition is related to an in-service injury, event, or disease, he is not competent to provide a nexus opinion in this case. This issue is also medically complex, as it requires specialized medical education. Jandreau v. Nicholson, 492 F.3d 1372, 1377, 1377 n.4 (Fed. Cir. 2007). Consequently, the Board gives more probative weight to the competent medical evidence.

Although the Veteran has established a current disability, the preponderance of the evidence weighs against a finding that his lumbar spine condition is causally related to his service, was chronic in service, or manifested within an applicable presumptive period. Since the preponderance of the evidence is against the claim, the benefit-of-the-doubt rule is not applicable. 38 U.S.C. § 5107; 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990). For these reasons, the claim is denied.

2. Service connection for GERD and depressive illness.

The Veteran contends that his GERD and depressive illness onset during active service. 

While the Veteran has diagnoses of GERD and depressive illness, the preponderance of the evidence is against finding that they began during active service, or is otherwise related to an in-service injury, event, or disease. 

Service treatment records are silent regarding any complaints of depression or GERD. The Veteran indicated on his report of medical examination at separation normal genitourinary and psychiatric clinical evaluations. See February 1982 Report of Medical Examination. The Veteran further indicated he did not have, nor did he ever have depression or frequent indigestion. Id.

VA treatment records show the Veteran was not diagnosed with GERD and depressive disorder until February 2013, 31 years after his separation from service. The Veteran denied being depressed in November 2011 and January 2012. See e.g., November 2011 Primary Care Note and January 2012 Nursing Note. The Veteran also denied symptoms of GERD during a review of systems from June 2011 through May 2012. See e.g., June 2011 Optometry Note and May 2012 Optometry Note. Buchanan v. Nicholson, 451 F.3d 1331, 1336-37 (Fed. Cir. 2006). Although, the Veteran was hospitalized for stomach pain and was diagnosed with pancreatitis in December 1993, this occurrence was 11 years after his separation from service. See December 1993 Discharge Summary.

These medical records are highly probative both as to the Veteran’s subjective reports and their resulting objective findings. They were generated with a view towards ascertaining the Veteran’s then-state of physical fitness and are akin to statements of diagnosis or treatment. Rucker v. Brown, 10 Vet. App. 67, 73 (1997) (observing that although formal rules of evidence do not apply before the Board, recourse to the Federal Rules of Evidence may be appropriate if it assists in the articulation of the reasons for the Board’s decision); see also LILLY’S: AN INTRODUCTION TO THE LAW OF EVIDENCE, 2nd Ed. (1987), pp. 245-46 (many state jurisdictions, including the federal judiciary and Federal Rule 803(4), expand the hearsay exception for physical conditions to include statements of past physical condition on the rationale that statements made to physicians for purposes of diagnosis and treatment are exceptionally trustworthy since the declarant has a strong motive to tell the truth in order to receive proper care).

While the Veteran believes his GERD and depressive illness are related to an in-service injury, event, or disease, the Board reiterates that the preponderance of the evidence weighs against findings that an in-service injury, event, or disease occurred. 

Although the Veteran has established a current disability, the preponderance of the evidence weighs against a finding that his GERD and depressive illness are causally related to his service. Since the preponderance of the evidence is against the claims, the benefit-of-the-doubt rule is not applicable. 38 U.S.C. § 5107; 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990). For these reasons, the claims are denied.

3. Service connection for hyperlipidemia.

Hyperlipidemia, colloquially referred to as “high cholesterol,” is “a general term for elevated concentrations of any or all of the lipids in the plasma, including hypertriglyceridemia, hypercholesterolemia, etc.” Dorland’s Illustrated Medical Dictionary (32nd ed. 2012). 

Hyperlipidemia and elevated cholesterol are laboratory findings, not disabilities in and of themselves. Thus, VA does not pay disability compensation benefits for them. See 61 Fed. Reg. 20,440, 20,445 (May 7, 1996).

Service connection for hyperlipidemia is denied.

4. Service connection for bilateral carpal tunnel syndrome, bilateral hip arthritis, bilateral knee arthritis, discoid lupus erythematosus, and hypertension.

The Veteran contends that he has bilateral carpal tunnel syndrome, bilateral hip arthritis, bilateral knee arthritis, discoid lupus erythematosus, and hypertension due to his active service.

While the Veteran has bilateral carpal tunnel syndrome, hip arthritis, and knee arthritis, discoid lupus erythematosus, and hypertension, which are chronic diseases under 38 U.S.C. § 1101(3) and 38 C.F.R. § 3.309(a), they were not shown as chronic in service or within a presumptive period, did not manifest to a compensable degree within a presumptive period, and were not noted in service with attributable continuity of symptomatology. 

VA treatment records show the Veteran was not diagnosed with hypertension until November 2011, 29 years after his separation from service; bilateral hip and knee arthritis and discoid lupus erythematosus until February 2013, 31 years after his separation from service; left carpal tunnel syndrome until May 2016, 34 years after his separation from service; and right carpal tunnel syndrome until April 2017, 35 years after his separation from service. All these diagnoses were decades outside of the applicable presumptive period. 

While the Veteran is competent to report having experienced symptoms of bilateral wrist, hip, and knee pain, high blood pressure, and a skin rash since service and consistently since service, he is not competent to provide a diagnosis in this case or determine that these symptoms were manifestations of bilateral carpal tunnel syndrome, hip arthritis, and knee arthritis; discoid lupus erythematosus; and hypertension. The issue is medically complex, as it requires knowledge of interpretation of complicated diagnostic medical testing. Jandreau v. Nicholson, 492 F.3d 1372, 1377, 1377 n.4 (Fed. Cir. 2007). 

The Veteran indicated in his report of medical examination at separation normal upper and lower extremities, skin, musculoskeletal, and vascular clinical evaluations. See February 1982 Report of Medical Examination. The Veteran further indicated he did not have nor, did he ever have a skin disease; high or low blood pressure; arthritis; or a bone, joint, or other deformity. Id.

These medical records are highly probative both as to the Veteran’s subjective reports and their resulting objective findings. They were generated with a view towards ascertaining the Veteran’s then-state of physical fitness and are akin to statements of diagnosis or treatment. Rucker v. Brown, 10 Vet. App. 67, 73 (1997) (observing that although formal rules of evidence do not apply before the Board, recourse to the Federal Rules of Evidence may be appropriate if it assists in the articulation of the reasons for the Board’s decision); see also LILLY’S: AN INTRODUCTION TO THE LAW OF EVIDENCE, 2nd Ed. (1987), pp. 245-46 (many state jurisdictions, including the federal judiciary and Federal Rule 803(4), expand the hearsay exception for physical conditions to include statements of past physical condition on the rationale that statements made to physicians for purposes of diagnosis and treatment are exceptionally trustworthy since the declarant has a strong motive to tell the truth in order to receive proper care).

There were not sufficient manifestations to identify the disease entities as chronic in service or within the first post-service year. Therefore, service connection for bilateral carpal tunnel, bilateral hip arthritis, bilateral knee arthritis, discoid lupus erythematosus, and hypertension is not warranted based on the presumption in favor of chronic diseases or continuity of symptomatology.

Service connection for bilateral carpal tunnel, bilateral hip arthritis, bilateral knee arthritis, discoid lupus erythematosus, and hypertension may still be granted on a direct basis; however, the preponderance of the evidence is against finding that a medical nexus exists between the Veteran’s bilateral carpal tunnel, bilateral hip arthritis, bilateral knee arthritis, discoid lupus erythematosus, and hypertension and an in-service injury, event or disease. 38 U.S.C. §§ 1110, 1131; Holton v. Shinseki, 557 F.3d 1363, 1366 (Fed. Cir. 2009); 38 C.F.R. § 3.303. 

Service treatment records indicate the Veteran was seen in service for a muscle contusion on his right side. However, the muscle contusion was treated and there were no further complaints. The Veteran indicated in his report of medical examination at separation normal upper and lower extremities, skin, musculoskeletal, and vascular clinical evaluations. See February 1982 Report of Medical Examination. The Veteran further indicated he did not have nor, did he ever have a skin disease; high or low blood pressure; arthritis; or a bone, joint, or other deformity. Id.

While the Veteran believes his bilateral carpal tunnel, bilateral hip arthritis, bilateral knee arthritis, discoid lupus erythematosus, and hypertension are related to an in-service injury, event, or disease, he is not competent to provide a nexus opinion in this case. This issue is also medically complex, as it requires specialized medical education. Jandreau v. Nicholson, 492 F.3d 1372, 1377, 1377 n.4 (Fed. Cir. 2007).

Although the Veteran has established a current disability, the preponderance of the evidence weighs against a finding that his bilateral carpal tunnel, bilateral hip arthritis, bilateral knee arthritis, discoid lupus erythematosus, and hypertension are causally related to his service, were chronic in service, or manifested within an applicable presumptive period. Since the preponderance of the evidence is against the claims, the benefit-of-the-doubt rule is not applicable. 38 U.S.C. § 5107; 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990). For these reasons, the claims are denied.

5. Service connection for sleep apnea.

The Veteran contends that he has sleep apnea that onset during his period of active service. 

The question for the Board is whether the Veteran has a current disability that began during service or is at least as likely as not related to an in-service injury, event, or disease. However, the preponderance of the evidence is against a finding that the Veteran has a current diagnosis of sleep apnea and has not had one at any time during the pendency of the claim or recent to the filing of the claim. Romanowsky v. Shinseki, 26 Vet. App. 289, 294 (2013); McClain v. Nicholson, 21 Vet. App. 319, 321 (2007).

VA treatment records show the Veteran participated in a sleep study in August 2014. See August 2014 Pulmonary Diagnostic Study Report. However, the Veteran failed to provide a complete sleep diary and no sleep periods were documented. Id. Although there was an impression of a moderate/high clinical probability for obstructive sleep apnea, no formal diagnosis was assessed. Id. The record is silent regarding any other complaints of sleep apnea.

While the Veteran is competent to report having experienced symptoms of sleep disturbance, he is not competent to provide a diagnosis in this case or determine that these symptoms were manifestations of sleep apnea. The issue is medically complex, as it requires specialized medical education. Jandreau v. Nicholson, 492 F.3d 1372, 1377, 1377 n.4 (Fed. Cir. 2007). 

Consequently, the claim of service connection for sleep apnea must be denied. In reaching this conclusion, the Board has considered the applicability of the benefit-of-the-doubt doctrine. However, as the preponderance of the evidence is against the claim, that doctrine is not applicable. See 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990).

6. Service connection for bilateral hearing loss.

Service connection for impaired hearing is subject to the requirements of 38 C.F.R. § 3.385, which provides that impaired hearing will be a disability only if at least one of the thresholds for the frequencies of 500, 1000, 2000, 3000, or 4000 Hertz is 40 decibels or greater; the thresholds for at least three of the frequencies are greater than 25 decibels; or speech recognition scores using the Maryland CNC Test are less than 94 percent. See Hensley v. Brown, 5 Vet. App. 155 (1993).

The Veteran contends that he has bilateral hearing loss due to service and that he has had it consistently since service. 

The Veteran’s April 1980 report of medical examination at enlistment showed normal hearing bilaterally and the Veteran reported that his ears were normal. The Veteran’s pure tone thresholds, in decibels, were as follows:

 HERTZ 

 500 1000 2000 3000 4000

RIGHT 10 10 20 25 25

LEFT 10 10 20 25 15

The Veteran’s February 1982 report of medical examination at separation showed normal hearing in the right ear and a hearing impairment in the left ear. However, the Veteran reported that his ears were normal. No defects were noted. The Veteran’s pure tone thresholds, in decibels, were as follows:

 HERTZ 

 500 1000 2000 3000 4000

RIGHT 15 15 25 25 15

LEFT 5 10 40 30 25

On the authorized audiological evaluation in December 2015, pure tone thresholds, in decibels, were as follows:

 HERTZ 

 500 1000 2000 3000 4000

RIGHT 15 15 40 20 25

LEFT 15 25 30 35 25

Speech audiometry revealed speech recognition ability of 94 percent both ears using the Maryland CNC Speech Discrimination Test. The average pure tone thresholds of 1000, 2000, 3000, and 4000 Hz, rounded to the nearest whole number, was 25 for the right ear and 29 for the left ear. There is nothing to suggest that this evaluation is not competent or credible. 

Based on this audiological evaluation, the Veteran has right ear hearing loss because one of the thresholds for the frequencies of 500, 1000, 2000, 3000, or 4000 Hertz is 40 decibels or greater. However, the Veteran does not have left ear hearing loss because neither of the thresholds for the frequencies of 500, 1000, 2000, 3000, or 4000 Hertz is 40 decibels or greater; the thresholds for at least three of the frequencies are not greater than 25 decibels; and the speech recognition score using the Maryland CNC Test is not less than 94 percent.

While the Veteran believes he has a current diagnosis of left ear hearing loss, he is not competent to provide a diagnosis in this case. The issue is medically complex, as it requires specialized medical education. Jandreau v. Nicholson, 492 F.3d 1372, 1377, 1377 n.4 (Fed. Cir. 2007). Consequently, the Board gives more probative weight to the competent medical evidence.

The preponderance of the evidence is against finding service connection for left ear hearing loss. There is no probative medical evidence that indicates the Veteran has or has had a left ear hearing impairment that meets the requirements of 38 C.F.R. § 3.385 at any time during the pendency of the claim or recent to the filing of the claim. 38 U.S.C. §§ 1110, 1131, 5107(b); Holton v. Shinseki, 557 F.3d 1363, 1366 (Fed. Cir. 2009); Romanowsky v. Shinseki, 26 Vet. App. 289, 294 (2013); McClain v. Nicholson, 21 Vet. App. 319, 321 (2007); 38 C.F.R. § 3.303(a), (d).

While the Veteran has right ear hearing loss and he is competent to report having experienced symptoms of right ear hearing loss since service and consistently since service, he is not competent to provide a diagnosis in this case or determine that these symptoms were manifestations of right ear hearing loss. The issue is medically complex, as it requires knowledge of interpretation of complicated diagnostic medical testing. Jandreau v. Nicholson, 492 F.3d 1372, 1377, 1377 n.4 (Fed. Cir. 2007). VA treatment records show no indication of the Veteran’s right ear hearing loss until the December 2015 VA examination. 

There is no objective medical evidence establishing that the Veteran’s right ear hearing loss was chronic in service or manifest to a compensable degree in service or within a presumptive period and continuity of symptomatology is not established. Therefore, the preponderance of the evidence is against a finding of service connection on a presumptive basis. 

Service connection for right ear hearing loss may still be granted on a direct basis; however, the preponderance of the evidence is against finding that a medical nexus exists between the Veteran’s hearing loss and an in-service injury, event or disease. 38 U.S.C. §§ 1110, 1131; Holton v. Shinseki, 557 F.3d 1363, 1366 (Fed. Cir. 2009); 38 C.F.R. § 3.303. 

The December 2015 audiologist opined that the Veteran’s right ear hearing loss is not at least as likely as not caused by or a result of an event in military service. The audiologist explained the Veteran reported occupational noise exposure without hearing protection due to his military occupational specialty (MOS) as multiple launch rocket system. However, the audiologist explained the Veteran’s April 1980 entrance exam and February 1982 separation exam revealed normal hearing sensitivity. The examiner further explained there were no significant threshold shifts for the right ear.

The audiologist’s opinion is probative, because it is based on an accurate medical history and provides an explanation that contains clear conclusions and supporting data. Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 304 (2008). 

VA treatment records indicate consistent reports of no hearing loss and hearing being grossly intact. Furthermore, the Veteran was determined not to be an ideal candidate for hearing aids. There is no objective evidence establishing a nexus between the Veteran’s right ear hearing loss and his active service.

While the Veteran believes his right ear hearing loss is related to an in-service injury, event, or disease, he is not competent to provide a nexus opinion in this case. This issue is also medically complex, as it requires specialized medical education. Jandreau v. Nicholson, 492 F.3d 1372, 1377, 1377 n.4 (Fed. Cir. 2007). Consequently, the Board gives more probative weight to the December 2015 VA audiologist’s opinion. Therefore, the preponderance of the evidence is against a finding of a nexus and service connection on a direct basis is not warranted.

The Veteran does not have left ear hearing loss at a level considered to be a disability for VA purposes. Although the Veteran has established a current disability of right ear hearing loss, the preponderance of the evidence weighs against a finding that the Veteran’s right ear hearing loss is causally related to his service, manifested within an applicable presumptive period, or was chronic in service. Since the preponderance of the evidence is against the claim, the benefit-of-the-doubt rule is not applicable. 38 U.S.C. § 5107; 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990). For these reasons, the claim is denied.

7. Service connection for tinnitus.

Tinnitus is defined as a ringing in the ears, and it is a disorder that is uniquely identifiable by the senses of the person experiencing it. It is a condition that is “simple” in nature in that respect, and thus, is a disability that can be diagnosed by the person experiencing the condition. See Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007). That is, the confirmation of the existence of tinnitus does not require any medical expertise (i.e. is not “complex” in nature), and assuming the allegations of the veteran are credible, testimonial evidence of an origin of the condition in service can be used to support a claim for service connection.

As a layperson, the Veteran is competent to report that he has, and has had ringing in the ears since service. The Veteran therefore has a disability.

As to the question of an in-service event, the Veteran’s Report of Separation from the Armed Forces (DD Form 214) reflects that his MOS was Hawk Missile Crewman. The law provides that due consideration shall be given to the places, types and circumstances of such Veteran’s service as shown by such Veteran’s service record, the official history of each organization in which such Veteran served, such Veteran’s medical records, and all pertinent medical and lay evidence. 38 U.S.C. § 1154(a). As a missile crewman, the Veteran would likely have been exposed to noise. Therefore, his noise exposure is presumed.

The Veteran’s April 1980 report of medical examination at enlistment and his February 1982 report of medical examination at separation indicate clinically normal ear examinations. The Veteran’s service treatment records are silent regarding any complaints, diagnoses, or treatments for tinnitus in service.

VA treatment records indicate that the Veteran denied tinnitus in July 2013 and in February 2014. See e.g., July 2013 Rheumatology Consult and February 2014 Internal Medicine H&P Note. 

At the December 2015 VA examination, the examiner stated that the Veteran’s tinnitus is at least as likely as not a symptom associated with hearing loss. The examiner did not opine whether the Veteran’s tinnitus was caused by service. However, the Veteran reported that his tinnitus began approximately seven months prior to the examination, which is the Veteran’s first report of tinnitus in the record.

Although the Veteran has tinnitus and his noise exposure is presumed, the preponderance of the evidence weighs against a finding that his tinnitus is causally related to his service, manifested within an applicable presumptive period, or was chronic in service. There is no probative evidence that indicates the Veteran has reported recurrent tinnitus since service. Consequently, the claim of service connection for tinnitus must be denied. In reaching this conclusion, the Board has considered the applicability of the benefit-of-the-doubt doctrine. However, as the preponderance of the evidence is against the claim, that doctrine is not applicable. See 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990).

REASONS FOR REMAND

1. Service connection for right eye condition (claimed as monocular esotropia) is remanded.

The issue of service connection for right eye condition is remanded to correct a duty to assist error that occurred prior to the November 2018 rating decision on appeal. The AOJ did not obtain a VA examination regarding whether the Veteran’s right eye condition was caused by an in-service injury, event, or illness. The Board finds that a VA examination is required to make this determination.

The matters are REMANDED for the following action:

1. Request the Veteran provide any service treatment records he possesses or identify and secure any relevant private medical records that are not in the claims file. If the Veteran identifies private records, following the securing of the appropriate waivers, make all appropriate attempts to locate such records and to associate them with the claims file. If the Veteran has no further evidence to submit, or, if after exhaustive efforts have been made, no records can be identified, so annotate the record.

2. Obtain any outstanding VA medical records and associate them with the claims file.

3. Schedule the Veteran for an appropriate VA examination to determine the nature and etiology of his right eye condition. The entire claims file, including a copy of the Remand, should be made available to, and be reviewed by, the VA examiner. All appropriate tests, studies, and consultations should be accomplished, and all clinical findings should be reported in detail. An explanation should be given for all opinions and conclusions rendered.

Based upon a review of the relevant evidence of record, history provided by the Veteran, and sound medical principles, the VA examiner should provide the following opinion:

(a.) Identify whether the Veteran’s right eye condition clearly and unmistakably existed prior to service.

(b.) If the Veteran’s right eye condition DID clearly and unmistakably exist prior to service, identify whether the Veteran’s right eye condition was aggravated beyond its natural progression by an in-service injury, event, or illness.

(c.) If the Veteran’s right eye condition DID NOT clearly and unmistakably exist prior to service, identify whether the Veteran’s right eye condition incurred in service or was caused by an in-service injury, event, or illness.

The examiner must review the entire record in conjunction with rendering the requested opinions. In addition to any records that are generated because of this Remand, the VA examiner’s attention is drawn to the following:

• April 1980 Report of Medical Examination at Enlistment referencing a right eye contusion in 1972. See “STR – Medical,” received April 13, 1980, page 20 of 41.

• February 1982 Report of Medical Examination at Separation referencing the Veteran being hit in the right eye with a rock in 1977, hospitalization for three weeks, treatment for five weeks, and a current eye problem causing recurrent headaches since 1971. See “STR – Medical,” received April 13, 1980, page 4 of 41.

• February 2013 H&P Note indicating a diagnosis of glaucoma and a blind right eye. See “CAPRI,” received November 20, 2015, page 826 of 881.

A thorough explanation must be provided for the opinions rendered. If the examiner cannot provide the requested opinions without resorting to speculation, s/he should expressly indicate this and provide supporting rationale as to why the opinions cannot be made without resorting to speculation. 

(Continued on the next page)

 

The examiner is advised that by law, the mere statement that the claims folder was reviewed, and/or the examiner has expertise is not sufficient to find the examination/opinion sufficient.

 

Vito A. Clementi

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD S. McLendon, Associate Counsel